UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AMANDA EVERITT, | |
| Plaintiff, | CIVIL ACTION NO. 3:25-CV-00404 |
| v. | (SAPORITO, J.) |
| LUZERNE COUNTY d/b/a LUZERNE-WYOMING COUNTIES MENTAL HEALTH & DEVELOPMENTAL SERVS., | |
| Defendant. | |

## MEMORANDUM

On March 4, 2025, the plaintiff, Amanda Everitt, initiated this action against the defendant, Luzerne County doing business as Luzerne-Wyoming Counties Mental Health and Developmental Services ("Luzerne County"), for violations of the Family and Medical Leave Act of 1993 ("FMLA"), and the Medical Marijuana Act ("MMA"), 35 Pa. C.S. §§ 10231.101 *et seq.* (Doc. 1). On November 20, 2025, the plaintiff filed a second amended complaint against Luzerne County asserting retaliation and interference claims under the FMLA. (Doc. 24). Now before the Court is Luzerne County's motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 25). The

parties have briefed the motion (Doc. 26; Doc. 27; Doc. 28) and it is now ripe for review.

## I.    Background[1]

In April of 2014, Luzerne County hired the plaintiff as a "Case Worker 2." Throughout the next decade, the plaintiff was promoted to multiple different positions. At the time of the events underlying this action, the plaintiff was a program specialist. But throughout her employment, the plaintiff also had a serious medical condition, Spondylarthritis in her spine, which the plaintiff alleges affects her daily life of performing manual tasks, walking, sitting, and standing. The plaintiff avers that her condition is considered a disability under the Americans with Disabilities Act of 1990 and the Pennsylvania Human Relations Act. The plaintiff alleges that Luzerne County was made aware of her medical condition during the hiring process.

In 2020, the plaintiff began using medical marijuana as a treatment for her disability after being prescribed the treatment by her primary care physician. The plaintiff alleges that she informed Luzerne County

---

[1] The facts are taken from the plaintiff's operative complaint, the third amended complaint. (Doc. 24).

of her status as a certified medical marijuana user. Moreover, the plaintiff contends that prior to 2023, the year of the underlying events, Luzerne County allowed her to use her vacation time for leave on days in which the plaintiff experienced heightened back pain related to her disability.

On July 31, 2023, the plaintiff alleges that two employees of Luzerne County, Administrator Tara Fox and then-Human Resources Deputy Director Allision Lussier, approached her in her office and demanded that the plaintiff take an impromptu drug test. The plaintiff informed the employees that she would not be able to pass the drug test due to her lawful medical marijuana use and represented that she never smoked marijuana before going to work. The plaintiff also stated that she neither possessed medical marijuana nor was she under its influence while at work. Nonetheless, the plaintiff alleges that she abided by her superior's orders and completed a drug test on or about July 31, 2023. The plaintiff additionally asked for FMLA leave paperwork for her condition on that same date.

On August 10, 2023, Luzerne County informed the plaintiff that she

had not passed her drug test and scheduled a *Loudermill* hearing[2] for the plaintiff's violation of the County's drug and alcohol-free workplace policy. During the hearing, the plaintiff contends that she reasserted that she was certified to use medical marijuana for her condition and explained that her positive drug test resulted from that usage. The plaintiff also notes that an employee of Luzerne County falsely accused the plaintiff of being "caught smoking marijuana" while at work. Nonetheless, despite the false accusation, the plaintiff avers that she was able to continue her work at Luzerne County.

On August 14, 2023, the plaintiff alleges that she submitted her Intermittent FMLA paperwork within the two-week deadline necessitated by Luzerne County. On August 16, 2023, two days after the submission of her paperwork, the plaintiff was terminated from her job. The plaintiff avers that she was informed her termination resulted from her failed drug test on July 31, 2023, but the plaintiff believes that her termination was retaliation concerning her application for Intermittent

---

[2] A Loudermill Hearing refers to the case, *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985), where the Supreme Court held that public employees are entitled to a pretermination hearing and an opportunity to present evidence challenging their disciplinary actions.

FMLA leave. Moreover, the plaintiff alleges that Luzerne County interfered with her ability to exercise her right to Intermittent FMLA leave by terminating her employment after she submitted a completed application. The plaintiff has therefore brought counts of retaliation and interference against Luzerne County under the FMLA for her termination.

## II.   Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322

(2007). Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). Nor is it required to credit factual allegations contradicted by indisputably authentic documents on which the complaint relies or matters of public records of which we may take judicial notice. *In re Washington Mut. Inc.*, 741 F. App'x 88, 91 n.3 (3d Cir. 2018); *Sourovelis v. City of Philadelphia*, 246 F. Supp. 3d 1058, 1075 (E.D. Pa. 2017); *Banks v. Cnty. of Allegheny*, 568 F. Supp. 2d 579, 588–89 (W.D. Pa. 2008).

## III.  Discussion

Under the FMLA, an eligible employee is entitled to a total of 12 workweeks of leave during any 12-month period because of a serious health condition that makes the employee unable to perform the functions of his or her position. *See* 29 U.S.C. § 2612(a)(1)(D). "[W]hen an employee returns from such leave, the employer must restore the employee to the same or equivalent position held by the employee when the leave commenced, as well as restore the employee with equivalent

benefits and conditions of employment." *Capps v. Mondelez Global, LLC*, 847 F.3d 144, 151 (3d Cir. 2017); *see also* 29 U.S.C. § 2614(a).

As the Third Circuit has explained:

> When employees invoke rights granted under the FMLA, employers may not "interfere with, restrain, or deny the exercise of or attempt to exercise" these rights. Nor may employers "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful." The former provision is generally, if imperfectly, referred to as "interference" whereas the latter is often referred to as "retaliation."

*Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 301 (3d Cir. 2012) (citations omitted) (quoting 29 U.S.C. § 2615(a)); *see also Capps*, 847 F.3d at 151 (quoting *Lichtenstein*); *Ross v. Gilhuly*, 755 F.3d 185, 191 (3d Cir. 2014) (quoting *Lichtenstein*). In addition, the federal regulations implementing the FMLA prohibit employers "from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights." *Capps*, 847 F.3d at 151 (quoting 29 C.F.R. § 825.220(c)); *see also Lichtenstein*, 691 F.3d at 301 (discussing § 825.200(c)).

The plaintiff has alleged both interference and retaliation claims.

### A. FMLA Retaliation Claim

To establish a retaliation claim under the FMLA, a plaintiff must

show that: "(1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights." *Lichtenstein*, 691 F.3d at 301–02; *see also Capps*, 847 F.3d at 152 n.6; *Ross*, 755 F.3d at 193; *Duran v. Cnty. of Clinton*, 380 F. Supp. 3d 440, 451 (M.D. Pa. 2019); *Murray v. JELD-WEN, Inc.*, 922 F. Supp. 2d 497, 513 (M.D. Pa. 2013). "Because FMLA retaliation claims require proof of the employer's retaliatory intent, courts have assessed these claims through the lens of employment discrimination law." *Lichtenstein*, 691 F.3d at 302. The plaintiff's allegations clearly satisfy the first two elements. The plaintiff alleges that she invoked her right by submitting her completed Intermittent FMLA paperwork and that she suffered an adverse employment action through her termination. (Doc. 24, ¶¶ 46, 48). Indeed, the defendant does not contest these two allegations in its briefs. *See* (Doc. 26; Doc. 28). Luzerne County contests the third element by arguing that the plaintiff's termination was causally related to her failed drug test rather than the invocation of her FMLA rights. (Doc. 26, at 10–11).

With respect to the third element, causation, this court has observed that:

> The quality of evidence in a civil rights action will usually determine which [causation] framework applies. Traditionally, direct-evidence claims have been analyzed under the mixed-motives theory articulated in *Price-Waterhouse v. Hopkins*, [490 U.S. 228 (1998)], and circumstantial-evidence claims have been governed by the burden-shifting ["pretext"] paradigm outlined in *McDonnell Douglas Corp. v. Green*, [411 U.S. 792 (1973)]. However, the Third Circuit recently held that direct evidence is not required to proceed under a mixed-motives theory of liability for an FMLA claim in light of the Supreme Court's decision in *Desert Palace, Inc. v. Costa*, [539 U.S. 90 (2003)].

*Duran*, 380 F. Supp. 3d at 450. Typically, the court's determination on which framework properly fits the evidence lies at trial. *See May v. PNC Bank*, 434 F. Supp. 3d 284, 295 (E.D. Pa. 2020); *Griffin v. Don E. Bower, Inc.*, Civil Action No. 3:16-2412, 2017 WL 4310091, at *6–*7 (M.D. Pa. Sept. 28, 2017).

> The "mixed-motive" framework is "more lenient" than the "pretext" framework. "The difference is in the degree of causation that must be shown: in a 'mixed motive' case, the plaintiff must ultimately prove that her protected [activity] was a 'motivating' factor, whereas in a non-mixed motive or 'pretext' case, the plaintiff must ultimately prove that her status was a 'determinative' factor."

*Beird v. Lincoln Univ. of Commonwealth Sys. of Higher Educ.*, 487 F. Supp. 3d 270, 279 n.3 (E.D. Pa. 2020) (citations omitted). Here, the plaintiff invokes the *McDonnell Douglas* pretext paradigm in support of

- 9 -

her retaliation claim.

Under the *McDonnel Douglas* pretext framework,

> the plaintiff must show that the request for leave or the taking of leave was a determinative factor in the employer's decision[,] after which the burden of production shifts to the defendant to show a legitimate, nondiscriminatory reason for the firing. The plaintiff must then persuade the jury that the preferred reason is merely pretext; the burden of persuasion always remains with the plaintiff.

*Griffin*, 2017 WL 4310091, at \*7 (citation omitted). At the motion to dismiss stage, the plaintiff must plead sufficient facts to establish a *prima facie* case of retaliation and show that Luzerne County's alleged reason for the termination was pretextual. The plaintiff "must point to evidence sufficient to create an inference that a causative link exists between her FMLA leave and her termination." *Lichtenstein*, 691 F.3d at 307. "This analysis frequently turns on one of two criteria: (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Duran*, 380 F. Supp. 3d at 451 (internal quotation marks omitted); *see also Capps*, 847 F.3d at 152 & n.6; *Lichtenstein* 61 F.3d at 307; *Murray*, 922 F. Supp. 2d at 514.

The plaintiff argues that the unusually suggestive temporal

proximity between her request for, and submission of, FMLA paperwork and her termination purportedly due to her positive drug test suffices to demonstrate a causal connection for her retaliation claim. We find this argument to be persuasive. "Courts have found a lapse of two days to three weeks between protected activity and a retaliatory action to be 'unduly suggestive.'" *Duran*, 380 F. Supp. 3d at 451; *see also Lichtenstein*, 691 F.3d at 307 (collecting cases). Here, the plaintiff alleges that on August 14, 2023, she submitted her completed Intermittent FMLA paperwork to Luzerne County. (Doc. 24, ¶ 46). She further avers that on August 16, 2023, she was terminated from her employment only two days after submitting that paperwork. (*Id.*, ¶ 46). This temporal proximity between those two actions falls squarely between the time period that courts have found to be unduly suggestive. But we also note that the plaintiff's termination occurred less than a week after she was allegedly told by her employer that she could continue to work. (*Id.*, ¶ 43).[3]

---

[3] The plaintiff's complaint does not definitively indicate on which date she attended the *Loudermill* hearing or on which date she was told she could continue working for Luzerne County after that hearing. *See generally* (Doc. 24). But the complaint makes clear that those two actions occurred at some point in between her notification that she had failed her drug test on August 10, 2023, and her termination on August 16, 2023.

Therefore, the plaintiff's allegations satisfy the inference of a causal link between the timing and reasoning of the plaintiff's termination and the plaintiff's application for leave under the FMLA.

Luzerne County also moves to dismiss the plaintiff's retaliation claim by arguing that "intervening positive drug test cuts off the chain of causation for her FMLA retaliation and interference claims." (Doc. 26, at 10). But Luzerne County's contention rests on the assumption that the plaintiff was fired for failing her drug test, rather than the plaintiff's request for leave under the FMLA. *See* (*Id.*, at 7) ("Luzerne County, acting in accordance with its policies and procedures, terminated Everett's employment … for failing the drug test."). The plaintiff, however, pleads otherwise, and at this stage, the plaintiff needs only to allege sufficient facts showing that she is entitled to relief. *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 265 (3d Cir. 2021) (citing *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) and Fed. R. Civ. P. 8(a)(2)). We find that the plaintiff has done so here. Therefore, Luzerne County's motion to dismiss concerning the plaintiff's retaliation claim under the FMLA will be denied.

### B. FMLA Interference Claim

To establish an interference claim under the FMLA, a plaintiff must show that:

> (1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA.

*Ross*, 755 F.3d at 191–92; *Capps*, 847 F.3d at 155. "Unlike an FMLA retaliation claim, an interference action is not about discrimination, it is only about whether the employer provided the employee with the entitlements guaranteed by the FMLA." *Capps*, 847 F.3d at 155 (internal quotation marks and brackets omitted); *see also Ross*, 755 F.3d at 192. "Under an interference claim, the employee need not show that he was treated differently than others, and the employer cannot justify its actions by establishing a legitimate business purpose for its decision." *Ross*, 755 F.3d at 192 (internal quotation marks and brackets omitted). The plaintiff argues that Luzerne County interfered with her ability to exercise her rights under the FMLA by terminating her employment. (Doc. 12, ¶ 75); (Doc. 12, ¶ 74) ("The interference occurred in the form of

terminating her employment and therefore interfering with her ability to invoke her federally protected rights under the FMLA.").

Luzerne County moves to dismiss the plaintiff's interference claim on two independent bases, the first of which we need only briefly analyze. As it did with its retaliation claim, the County argues that the "intervening positive drug test cuts off the chain of causation for her FMLA retaliation and interference claims." (Doc. 26, at 10). But as we held above, this argument is unavailing at this stage. Second, it moves to dismiss the plaintiff's interference claim on the basis that it is identical to her retaliation claim. (Doc. 26, at 11–14). The Third Circuit has held that "firing an employee for a valid request for FMLA *may* constitute interference with the employee's FMLA rights as well as retaliation against the employee." *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 509 (3d Cir. 2009) (emphasis added). But as courts have noted, "the precise circumstances under which a plaintiff may advance both retaliation and interference claims is not entirely clear." *DeCicco v. Mid-Atl. Healthcare, LLC*, 275 F. Supp. 3d 546, 563 (E.D. Pa. 2017); *Lichtenstein*, 691 F.3d at 314 n.25 ("It is not clear to us that *Erdman* necessarily guarantees that plaintiffs have an automatic right to claim interference where [such a]

- 14 -

claim is so clearly redundant to the retaliation claim. In recent years, several federal courts of appeals have affirmed dismissal of interference claims that … were duplicative of the plaintiffs' retaliation claims."); *see also Beese v. Meridian Health Sys., Inc.*, 629 F. Appx. 218, 223 n.3 (3d Cir. 2015) ("The District Court suggested that [the plaintiff's] FMLA interference claim should be dismissed because it is duplicative of his FMLA retaliation claim. Because summary judgment on the FMLA interference claim is appropriate notwithstanding its similarity to the FMLA retaliation claim, we need not decide whether and under what circumstances duplicative FMLA claims may be dismissed simply because they are duplicative.").

"[S]ome district courts within the Third Circuit have recognized that, where an interference claim is similar in both form and substance to a retaliation claim, the interference claim is more appropriately analyzed as a retaliation claim." *DeCicco*, 275 F. Supp. 3d at 562–63; *see Mascioli v. Arby's Rest. Grp., Inc.*, 610 F. Supp. 2d 419, 432 (W.D. Pa. 2009) ("Plaintiff's argument with respect to her interference claim is that defendant took an adverse employment action because she requested leave. This is, in essence, identical to her retaliation claim[.]"); *Atchison*

*v. Sears*, 666 F. Supp. 2d 477, 489 (E.D. Pa. 2009) ("[The plaintiff's] interference claim is identical to his retaliation claim, and premised on the same allegation that [the defendant] took adverse employment action against him because he requested FMLA leave. He cannot escape the *McDonnell Douglas* analysis to prove his case merely by affixing an "interference' label to one of his duplicative claims."). Other courts have declined to adopt this recognition. *See Kohler v. TE Wire & Cable LLC*, 2016 WL 885045, at *10 (D.N.J. Mar. 8, 2016) ("The Court will not dismiss Plaintiff's interference claim as duplicative of his retaliation claim"); *DeCicco*, 275 F. Supp. 3d at 564 ("Viewed in the light most favorable to Plaintiff, and in the absence of clear guidance from the Third Circuit, I cannot conclude as a matter of law that the circumstances comprising Plaintiff's interference claim are 'so clearly redundant' to his retaliation claim such that it should be dismissed as duplicative.") (citations omitted). *Beird*, 487 F. Supp. 3d at 281 ("We join our colleague's opinion in *DeCicco* in concluding that without clear guidance from the Third Circuit on the contours of a termination-based interference claim, we should be hesitant to dismiss an interference claim on summary judgment where a plaintiff's termination 'resulted in benefits being

- 16 -

withheld.'") (citations omitted).

In light of this background, we find that given the state of the record before us, further discovery will be needed to determine the extent of the alleged duplicities of the plaintiff's interference and retaliation claims. While we acknowledge that the plaintiff's interference and retaliation claims appear to be similar, we note that those shared characteristics do not inherently mean they are identical. *See May v. PNC Bank*, 434 F. Supp. 3d 284, 303 (E.D. Pa. 2020) (finding that while the plaintiff's interference and retaliation claims were "closely and finely related[,]" they were not "identical in form or substance."). Therefore, viewing the alleged facts in the light most favorable to the plaintiff, we must deny Luzerne County's motion to dismiss on this count.

## IV.    Conclusion

For the foregoing reasons, we will deny Luzerne County's motion to dismiss.

An appropriate order follows.


Dated: June 12, 2026                         *s/Joseph F. Saporito, Jr.*
                                             JOSEPH F. SAPORITO, JR.
                                             United States District Judge